NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BLUE CROSS AND BLUE SHIELD OF KANSAS CITY WELFARE BENEFIT PLAN, LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY WELFARE BENEFIT PLAN, HOSPITAL AND MEDICAL PLAN FOR BLUECROSS BLUESHIELD OF SC, THE CAREFIRST FLEXIBLE BENEFITS PLAN, COOK GROUP HEALTH PLAN, LESTER E. COX MEDICAL CENTER WELFARE BENEFIT GROUP INSURANCE PLAN, HUMANA BENEFIT PLANS, HYATT CORPORATION WELFARE PLAN, UNITEDHEALTH GROUP EMPLOYEE HEALTH BENEFIT PLAN, HEALTH CARE SERVICE CORPORATION MASTER FLEXIBLE BENFIT PLAN, HEALTHCARE SERVICE CORPORATION EMPLOYEES WELFARE PLAN, AETNA INC. MEDICAL DENTAL BENEFIT PLAN, UNITEDHEALTH GROUP POST-EMPLOYMENT MEDICAL PLAN, THE BOARD OF TRUSTEES OF THE CARPENTERS HEALTH AND WELFARE TRUST FUND FOR CALIFORNIA, THE CARPENTERS HEALTH AND WELFARE TRUST FUND FOR CALIFORNIA,**
*Plaintiffs-Appellants*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2024-2317, 2025-1027

———————————

Appeals from the United States Court of Federal Claims in Nos. 1:23-cv-00641-EMR, 1:23-cv-00642-EMR, 1:23-cv-00643-EMR, 1:23-cv-00644-EMR, 1:23-cv-00645-EMR, 1:23-cv-00647-EMR, 1:23-cv-00648-EMR, 1:23-cv-00650-EMR, 1:23-cv-00651-EMR, 1:23-cv-01282-EMR, 1:23-cv-01455-EMR, 1:23-cv-01491-EMR, Judge Eleni M. Roumel.

———————————

Decided:  July 17, 2026

———————————

AMANDA SHAFER BERMAN, Crowell & Moring, LLP, Washington, DC, argued for all plaintiffs-appellants. Plaintiffs-appellants Aetna Inc. Medical Dental Benefit Plan Blue Cross and Blue Shield of Kansas City Welfare Benefit Plan Carefirst Flexible Benefits Plan Cook Group Health Plan Health Care Service Corporation Master Flexible Benefit Plan Healthcare Service Corporation Employees Welfare Plan Hospital and Medical Plan for Bluecross Blueshield of SC Humana Benefit Plans Hyatt Corporation Welfare Plan Lester E. Cox Medical Center Welfare Benefit Group Insurance Plan Louisiana Health Service & Indemnity Company Welfare Benefit Plan UnitedHealth Group Employee Health Benefit Plan UnitedHealth Group Post-Employment Medical Plan also represented by CHARLES BAEK, STEPHEN JOHN MCBRADY, ISSAC D. SCHABES.

MICHAEL KORDA, Kraw Law Group, Mountain View, CA, for plaintiffs-appellants Board of Trustees of the Carpenters Health and Welfare Trust Fund for California, Carpenters Health and Welfare Trust Fund for California.

SIMON GREGORY JEROME, Appellate Staff, Civil Division, United States Department of Justice, Washington,

DC, argued for defendant-appellee.  Also represented by YAAKOV ROTH, CHARLES W. SCARBOROUGH.

————————————

Before DYK, REYNA, and TARANTO, *Circuit Judges*.

REYNA, *Circuit Judge*.

Blue Cross and Blue Shield of Kansas City Welfare Benefit Plan and other self-insured group health plans sued the United States government alleging an illegal exaction in violation of the Fifth Amendment.  The group health plans alleged that they were improperly required to contribute funds to the Patient Protection and Affordable Care Act's Transitional Reinsurance Program, 42 U.S.C. § 18061, and later were illegally denied a refund of those contributions.  The United States Court of Federal Claims consolidated the cases and dismissed all the complaints for lack of subject-matter jurisdiction because their claims were time-barred under the applicable six-year statute of limitations, 28 U.S.C. § 2501.  We affirm.

BACKGROUND

A. Transitional Reinsurance Program

Congress enacted the Patient Protection and Affordable Care Act ("Affordable Care Act") to increase the number of Americans covered by health insurance and decrease the cost of health care.  This appeal focuses on section 1341 of the Affordable Care Act, known as the Transitional Reinsurance Program.  *See generally* 42 U.S.C. § 18061.  The Transitional Reinsurance Program was intended to stabilize healthcare premiums for individuals during the early years of the Affordable Care Act, specifically from 2014 to 2016.

Under the Transitional Reinsurance Program, "health insurance issuers,[1] and third party administrators[2] on behalf of group health plans,"[3] were required to make payments to a reinsurance entity during a three-year period from 2014 to 2016. 42 U.S.C. § 18061(b)(1)(A). Reinsurance refers generally to a financial arrangement where an insurer transfers part of its risk to another entity, called the reinsurer or reinsurance entity. The reinsurance entity uses the collected funds to make reinsurance payments to health insurance issuers that cover high-risk patients. 42 U.S.C. § 18061(b)(1)(B), (b)(4).

Section 1341 did not specify the entity that would be responsible for contributing to the Transitional Reinsurance Program., i.e., the "contributing entity." The Affordable Care Act authorized the U.S. Department of Health and Human Services ("HHS") to promulgate regulations to carry out the Transitional Reinsurance Program. 42 U.S.C. § 18041(a). Under this authority, HHS promulgated a regulation defining "contributing entity" to clarify the entity required to make contributions under the Transitional Reinsurance Program.

In 2013, HHS defined "contributing entity" as "a health insurance issuer or self-insured group health plan" where a "self-insured group health plan is responsible for the reinsurance contributions, though it may elect to use a third party administrator or administrative services only

---

[1]   "Health insurance issuer" generally means an insurance company. *See* 42 U.S.C. § 300gg-91(b)(2).

[2]   "Third party administrator" generally means an entity that provides administrative support, such as claims processing, to health insurance issuers.

[3]   "Group health plan" generally means an employee welfare benefit plan that provides medical care to employees or their dependents. *See* 42 U.S.C. § 300gg-91(a)(1).

contractor for transfer of the reinsurance contributions." Final Rule, 78 Fed. Reg. 15410, 15525 (Mar. 11, 2013).

In 2014, HHS modified the definition of "contributing entity" to exclude self-administered plans, i.e., a group health plan that does not use a third-party administrator. HHS explained that "the better reading of section 1341 is that a self-insured, self-administered plan should not be a contributing entity, but in order to avoid disruption to contributing entities, we proposed to retain the prior definition of contributing entity for the 2014 benefit year."   Final Rule, 79 Fed. Reg. 13744, 13773 (Mar. 11, 2014).

Both definitions were captured in the promulgated regulation.   Final Rule, 79 Fed. Reg. 13744, 13834 (Mar. 11, 2014) (codified at 45 C.F.R. § 153.20).   The regulation provided that a "contributing entity" means that for the 2014 benefit year, a self-insured group health plan whether or not it uses a third party administrator; and for the 2015 and 2016 benefit years, a self-insured group health plan that uses a third party administrator.   *Id.*   In other words, the definition required group health plans that were both self-insured and self-administered to make contributions for 2014 but not for 2015 and 2016.[4]

---

[4]     The regulation provides:
For the 2014 benefit year, a self-insured group health plan (including a group health plan that is partially self-insured and partially insured, where the health insurance coverage does not constitute major medical coverage), whether or not it uses a third party administrator; and for the 2015 and 2016 benefit years, a self-insured group health plan (including a group health plan that is partially self-insured and partially insured, where the health insurance coverage does not constitute major medical coverage) that uses a third party administrator in

## B. *Electrical Welfare* Litigation

In March 2019, a group of health plans filed a class action lawsuit in the United States Court of Federal Claims ("Federal Claims Court") to recover contributions that they made to the Transitional Reinsurance Program during the 2014 benefit year. *Elec. Welfare Tr. Fund v. United States*, 155 Fed. Cl. 169, 173–74 (2021). The lead plaintiff, Electrical Welfare Trust Fund ("Electrical Welfare"), alleged that it was a self-insured, self-administered health plan, that it made contributions for the 2014 benefit year, and that the 2014 contributions constituted an illegal exaction because HHS's definition in 45 C.F.R. § 153.20 of "contributing entity" exceeded statutory authority and was an unreasonable interpretation of 42 U.S.C. § 18061. *Id.* at 174, 180. Electrical Welfare alleged that, even if the regulation was permissible, it was entitled to recover, i.e., be refunded, the contributions as just compensation under the Takings Clause of the Fifth Amendment. *Id.* at 174. Only Electrical Welfare's illegal exaction claim is relevant to this appeal because the pleadings here did not assert a takings claim.

The government moved to dismiss Electrical Welfare's complaint for failure to state a claim or, alternatively, for summary judgment. With respect to the illegal exaction claim, the Federal Claims Court denied the government's motions. As to the motion to dismiss, the Federal Claims Court reasoned that the plain language of § 1341 did not give HHS authority to require contributions from self-

---

connection with claims processing or adjudication (including the management of internal appeals) or plan enrollment for services other than for pharmacy benefits or excepted benefits within the meaning of section 2791(c) of the [Public Health Service] Act.

45 C.F.R. § 153.20 (2014).

administered, self-insured health plans for the 2014 benefit year. *Id.* at 183–84. Since Electrical Welfare "clearly alleged that it is a self-funded, self-administered plan that does not use a third-party administrator," the Federal Claims Court concluded that Electrical Welfare plausibly pled an illegal exaction claim. *Id.* On the alternative motion for summary judgment, the Federal Claims Court concluded that "there are genuine issues of material fact in dispute concerning the nature of the plaintiffs' property interest and the effect the [Transitional Reinsurance Program] had on those alleged property interests." *Id.* at 193 n.13.

In April 2022, Electrical Welfare moved to certify a class of entities eligible to recover under the illegal exaction claim. The Federal Claims Court granted the motion and certified the following class: "All self-administered, self-insured employee health and welfare benefit plans that are or were subject to the assessment and collection of the Transitional Reinsurance Contribution under Section 1341 of the Affordable Care Act for benefit year 2014 (the 'Exaction Class' or 'Class')." *Elec. Welfare Tr. Fund v. United States*, 160 Fed. Cl. 462, 465, 470 (2022). The Federal Claims Court set a December 2022 deadline for other group health plans to opt in to the class.

In May 2023, the Federal Claims Court entered partial judgment in favor of the Class on the illegal exaction claim and awarded just over $185 million in damages. *Elec. Welfare Tr. Fund v. United States*, No. 19-cv-353, 2023 WL 3409608, at *2 (Fed. Cl. May 12, 2023). After the government filed a notice of appeal, the parties agreed to settle the illegal exaction claims brought by the Class. *Elec. Welfare Tr. Fund v. United States*, 171 Fed. Cl. 362, 373 (2024). In May 2024, the Federal Claims Court granted a motion for final approval of the settlement. *Id.* at 392.

### C. Instant Proceedings

The appellants in this action claim they are self-administered and self-insured group health plans that did not opt in the *Electrical Welfare* Class. Instead, appellants elected to file individual suits in the Federal Claims Court between February and August 2023. The individual cases were consolidated, and Blue Cross and Blue Shield of Kansas City Welfare Benefit Plan ("Blue Cross"), No. 23-cv-641, was designated as the lead case. The complaints alleged that they were required to make contributions to the Transitional Reinsurance Program for the 2014 benefit year and that these contributions amounted to illegal exaction under the Fifth Amendment. J.A. 6–15; J.A. 252–62.

The government moved to dismiss the complaints for lack of subject-matter jurisdiction, arguing that the complaints were filed after the six-year filing deadline set forth in 28 U.S.C. § 2501 and that tolling was unavailable. Appellants recognized that their complaints were filed after the six-year statute of limitations and argued that their statutory deadline was tolled during the *Electrical Welfare* litigation. The dispute then centered on whether tolling was available under § 2501, such that the statute's six-year deadline was tolled by the *Electrical Welfare* litigation.

The tolling relevant to this appeal is known as *American Pipe* tolling. *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974). Generally, when a class action is filed, *American Pipe* tolls the statute of limitations for putative class members during the pendency of the putative class action. *China Agritech v. Resh*, 584 U.S. 732, 736 (2018). A putative class member is any entity who fits the description of the proposed class, and a putative class action is an action in which the class has not yet been certified. This tolling permits, after the statute of limitations has expired, unnamed putative class members to join the action or, if the class fails, to file separate claims. *Id.* Here, appellants identified the *Electrical Welfare* class action as the basis for

their *American Pipe* tolling claim, alleging that they were putative members of the *Electrical Welfare* Class.

Because the *Electrical Welfare* class was certified, and no longer putative, the Federal Claims Court ordered supplemental briefing on whether *American Pipe* tolling captured this situation.   J.A. 18.   In that supplemental briefing, the parties identified no "past decision in which *American Pipe* tolling was applied to an action in [the Federal Claims Court] after an opt-in class had been certified in an underlying class action."  J.A. 18.  While the government's position was that *American Pipe* tolling is unavailable under § 2501, it noted that, if *American Pipe* tolling was available, "no reason exists to treat class certification as a bar to class action tolling" in cases before the Federal Claims Court.  J.A. 18–19; J.A. 25 n.21.  Thus, the parties agreed before the Federal Claims Court that *American Pipe* tolling, if available under § 2501, applied to the putative class members from *Electrical Welfare* even though that class was certified.

On August 9, 2024, the Federal Claims Court granted the motion to dismiss, concluding that it lacked subject-matter jurisdiction.  It first noted that "the parties agree that without tolling, Plaintiffs' claims are untimely." J.A. 23.  It then concluded that "*American Pipe* tolling cannot toll the deadlines in 28 U.S.C. § 2501" and "the claims are time-barred."  J.A. 48.

On August 9, 2024, the Federal Claims Court entered judgment dismissing the complaints.  J.A. 1.  Blue Cross appeals.   We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

We review de novo the Federal Claims Court's dismissal for lack of subject-matter jurisdiction.  *Walby v. United States*, 957 F.3d 1295, 1298 (Fed. Cir. 2020).

DISCUSSION

The Tucker Act, 28 U.S.C. § 1491, waives government sovereign immunity and provides the Federal Claims Court with subject-matter jurisdiction "for certain damages suits" brought against the government. *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020). Claims brought under the Tucker Act are subject to the six-year statute of limitations in 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." A claim generally accrues "when all the events that have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009).

I.

The parties do not dispute that appellants filed their complaints in the Federal Claims Court after the six-year filing deadline. Specifically, appellants do not challenge the Federal Claims Court's determination that appellants' claims accrued no later than January 15, 2015, the date appellants were required to make contributions to the Transitional Reinsurance Program for the 2014 benefit year. Given this accrual date, the six-year deadline to file suit was January 15, 2021. Appellants sued between February and August 2023, more than two years after the deadline.

The fundamental dispute on appeal is whether appellants' late filings can be saved by *American Pipe* tolling. Appellants primary argument is that the Federal Claims Court "erred in holding that *American Pipe* tolling no longer applies to Section 2501's six-year statute of limitations for plaintiffs electing not to join class action lawsuits." Appellants' Br. 17. Appellants urge us to reverse the judgment of the Federal Claims Court and "remand with

instructions to find that *American Pipe* tolling principles apply to Section 2501's statute of limitations." Appellants' Br. 53.

Appellants recognize that the sole issue on appeal here, whether 28 U.S.C. § 2501 is subject to *American Pipe* tolling, "appears identical" to the issue in *Kelly v. United States*, No. 24-2042, ___ F.4th ___ (Fed. Cir. 2026). Appellants' Br. 1 ("One of several legal issues presented in *Kelly* appears identical to the sole issue presented by this case: whether, in light of the Supreme Court's decisions in *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130 (2008), and *Cal. Pub. Emp. Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497 (2017) ('*CalPERS*'), '*American Pipe* tolling'—the well-established rule for suspending the running of statutes of limitation in class actions for putative class members—remains available to toll the six-year limitations period set forth in 28 U.S.C. § 2501.").

In *Kelly*, we resolved this issue and held that § 2501 is not subject to *American Pipe* tolling. We concluded that this outcome is compelled by the Supreme Court's decisions in *Sand*, which explained that § 2501 is jurisdictional and not subject to equitable tolling, and by *CalPERS*, which explained that *American Pipe* tolling is equitable. *Kelly*, slip op. at 7–13, ___ F.4th at ____ (first citing *Sand*, 552 U.S. at 135–39; then citing *CalPERS,* 582 U.S. at 509). Because we are bound by *Kelly*, we hold that appellants' complaints in this action were untimely filed and that the Federal Claims Court properly dismissed the complaints for lack of subject-matter jurisdiction.

## II.

Two appellants, Board of Trustees of the Carpenters Health and Welfare Trust Fund for California and the Carpenters Health and Welfare Fund for California (collectively, the "Carpenters"), make a separate argument. The Carpenters argue that the Federal Claims Court's decision should be reversed as to them because, unlike the other

appellants, they opted in the *Electrical Welfare* class action but their claims were dismissed without prejudice. Specifically, the Carpenters argue that the Federal Claims Court "improperly shifted the burden of proof to the Carpenters at the pleading stage" by not accepting as true the allegations that they were "putative class members" of the *Electrical Welfare* class action and wrongly dismissed from that action. Appellants' Br. 51–52. The Carpenters argue that "[t]hese allegations, if accepted as true, show that the Plaintiff Carpenters filed a timely claim in the *Electrical Welfare* class action." Appellants' Br. 52.

The Carpenters' distinct argument is without merit. First, the Carpenters fail to cite any authority that supports their position that, for purposes of *American Pipe* tolling, there is a meaningful difference between putative class members that joined the underlying class action suit, like the Carpenters, and those that elected not to join, like the rest of the appellants. We are unaware of any such authority and are not persuaded that we should establish such a rule in this appeal. Second, the Supreme Court suggests there is no such difference: "The [*American Pipe*] rule is not dependent on intervening in or joining an existing suit . . . .'" *China Agritech*, 584 U.S. at 735 (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350, 353–54 (1983)). Third, we made no such distinction in *Kelly*.

The Carpenters' claims are untimely in this case because *putative class members* from *Electrical Welfare*, whether or not they joined that Class, are not entitled to *American Pipe* equitable relief to toll the § 2501 statute of limitations because § 2501 is a jurisdictional statute of limitations. *Kelly*, slip op. at 13, ___ F.4th at ___. We therefore affirm the Federal Claims Court's judgment that the Carpenters' individual suits in this case were untimely filed.

CONCLUSION

We have considered appellants' remaining arguments and find them without merit. For these reasons, we affirm the Federal Claims Court's dismissal of appellants' complaint as time-barred.

**AFFIRMED**

COSTS

No costs.